**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| PROMOTIONAL HEADWEAR INT'L, individually and on behalf of all others similarly situated, | Case No. 20-cv-2211 |
| | COMPLAINT |
| Plaintiff, | Class Action |
| v. | DEMAND FOR JURY TRIAL |
| THE CINCINNATI INSURANCE COMPANY, INC., | |
| Defendant. | |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Promotional Headwear International ("Plaintiff"), individually and on behalf of all others similarly situated, for its Class Action Complaint against Defendant The Cincinnati Insurance Company, Inc. ("Defendant"), states and alleges as follows:

**NATURE OF ACTION**

1. According to information published by the Insurance Information Institute, the U.S. insurance industry collected net premiums of $1.22 trillion in 2018. Premiums recorded by property/casualty insurers accounted for 51% of that amount.  Between 2014 and 2018, these insurers wrote net premiums each year of between $497 million to $612.6 million but only incurred losses of between $277.7 million and $360.9 million.

2. Plaintiff is a wholesale distributor of headwear, bags, aprons, towels, and other products, including custom promotional caps sold to businesses across the globe for marketing purposes. Plaintiff operates under the tradename Sportsman Cap & Bag. It was established in 1937, is family-owned business, and has at least 16 distributors worldwide. As a result of COVID-19 and Stay at Home Orders (as defined below), Plaintiff has been forced to greatly reduce its operations.

3.      Plaintiff purchased an all-risk commercial property insurance policy from Defendant to protect it in the event of property loss and business interruption. COVID-19 and the resulting response by state and local governments have caused physical loss of Plaintiff's property and have interrupted Plaintiff's business. Yet, Defendant has refused to honor its promise to provide the protection that Plaintiff purchased. Moreover, Plaintiff is not unique. The insurance industry appears to be taking a uniform approach to the current pandemic: deny coverage even when the policy they drafted and offered to insureds, and the policy paid for by the insureds, does not contain an exclusion for pandemic- or virus-related losses. Plaintiff's policy with Defendant is one such policy and exemplifies the broken promise from insurance companies across the country.

4.      This is a class action for declaratory judgment and breach of contract arising from Defendant's refusal to pay claims related to COVID-19 as required by its property insurance agreements it sold to Plaintiff and other businesses.

5.      The novel coronavirus – named "severe acute respiratory syndrome coronavirus 2" or "SARS-CoV2" – has spread widely and rapidly across the United States. The illness related to SARS-CoV-2 is "novel coronavirus disease 2019," commonly abbreviated to "COVID-19." Although the virus and related illness are distinct, for purposes of this Complaint, Plaintiff refers to both interchangeably as "COVID-19."

6.      Over 46,000 Americans have died of COVID-19 as of the date of this filing, according to the Centers for Disease Control and Prevention ("CDC").

7.      A growing body of evidence suggests that the virus transmits both through droplets, when someone sneezes and coughs, and aerosols, which are produced by normal breathing.

8.      Aerosols are particularly concerning because unlike droplets, which stay airborne for only a few seconds, aerosols are water droplets suspended in air and can remain suspended for hours, until gravity ultimately forces them to the nearest surface below.

9.      Consequently, aerosols can spread widely through air flow and settle on surfaces hundreds of feet away from any infected individual. Thus, someone not even in the vicinity of an infected person can unknowingly touch an infected surface, later touch their face, and become infected.

10.      In an effort to combat the virus and slow the spread of COVID-19, state and local governments across the country have imposed directives requiring residents to remain in their homes except to perform certain "essential" activities, like shopping for food, going to see a doctor, or getting fresh air. According to the New York Times, 95% of the United States population currently is under one or more state or local directives to stay at home.

11.      The state and local directives typically require businesses deemed "non-essential" to be closed and in-person work is not permitted. But even businesses classified as "essential" have been severely impacted by the pandemic. For example, "essential" businesses have had to increase the frequency of cleaning, reduce hours, install new protective barriers between employee and customer, and provide personal protective equipment to its workforce. But even with those precautions, many such business have had great difficulty retaining employees who fear becoming infected at work.

12.      Plaintiff is based in Johnson County, Kansas, and does business throughout the United States and abroad producing headwear and other apparel for businesses across the world.

13.      Johnson County and the State of Kansas have issued stay-at-home orders, as have the neighboring City of Kansas City, Missouri and State of Missouri (hereafter, "Stay at Home

Orders"). These Stay at Home Orders remain in effect and have caused the suspension of non-essential and essential businesses.

14.     The Stay at Home Orders and the transmission of COVID-19 have had a devastating effect on Plaintiff's business. Plaintiff's business was projected to exceed $100 million in sales in 2020. Because of the Stay at Home Orders and the transmission of COVID-19, several of its employees could not show up to work and risk becoming infected, preventing Plaintiff from meeting its sales targets.  In a short period of time these events have caused the loss of nearly 95% of Plaintiff's sales.

15.     Plaintiff's premises likely have been infected with COVID-19. It has suffered direct physical loss to the property. Although ingress and egress to the property currently is limited due to the Stay at Home Orders and transmission concerns, according to the World Health Organization ("WHO"), the incubation period for the coronavirus is at least 14 days. Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020 – weeks earlier than previously reported, suggesting that the virus has been circulated in the United States far longer than previously assumed. It is likely customers, employees, and/or other visitors to the insured property over the last two months were infected with the coronavirus and thereby infected the insured property with the coronavirus.

16.     The transmission of COVID-19 and the Stay at Home Orders have otherwise affected Plaintiff's or other Class members' businesses. For example, customers cannot access the property due to the Stay at Home Orders or fear of being infected with or spreading COVID-19. Suppliers have also been similarly restricted by the pandemic.

17.     But Plaintiff, like countless other small businesses, prepared for an unexpected event like the COVID-19 pandemic. Specifically, it purchased property insurance from Defendant,

bearing Policy No. 05ECP0562300 (the "Policy"), that did not exclude pandemic coverage. A true and accurate copy of the Policy is attached hereto as Exhibit A.

18.     The Policy is comprised of a number of forms and endorsements that define the scope of coverage. Upon information and belief, the forms and endorsements used in Plaintiff's Policy are materially the same as those policies held by the members of the proposed class.

19.     The Policy is an all-risk policy, meaning it covers all losses for direct "loss" to Covered Property unless specifically excluded. Exhibit A at 5. "Loss" is defined as "accidental physical loss or accidental physical damage." *Id.* at 40.

20.     As set forth below, the Policy also provides coverage for:

   a.     losses sustained due to the necessary suspension of operations ("Business Income" coverage) (*id.* at 74);

   b.     interruption of business caused by an order from a civil authority ("Civil Authority" coverage) (*id.* at 75);

   c.     expenses incurred to minimize suspension of business ("Extra Expense" coverage) (*id.* at 74);

   d.     losses caused by the prevention of existing ingress or egress at the premises ("Ingress or Egress" coverage) (*id.* at 77); and

   e.     expenses necessary to protect Covered Property from further damage in the event of a loss ("Sue and Labor" coverage) (*id.* at 78).

21.     The Policy defines "suspension" to include the "slowdown or cessation of your business activities[.]" Exhibit A at 42.

22.     In addition, the Policy requires Plaintiff to "[t]o take all reasonable steps to protect the Covered Property from further damage" when a loss occurs, which in this instance required Plaintiff to suspend operations to reduce the spread of COVID-19 and further losses occasioned by its spread on Plaintiff's premises. Exhibit A at 32.

23.     On or about March 2020, Plaintiff notified Defendant of a loss covered by the Policy, seeking coverage related to COVID-19. In response, Defendant requested additional information beyond that required by the Policy and beyond what is reasonably necessary to evaluate Plaintiff's claim for coverage. Upon information and belief, Defendant has uniformly refused to pay its insureds under its standard policy for losses related to COVID-19. Defendant is in breach of its obligations by refusing to provide coverage despite having sufficient information to evaluate and pay the claim.

24.     Defendant has caused material harm to Plaintiff and the proposed class by refusing coverage under the Policy.

25.     On behalf of himself and the class, Plaintiff seeks to recover compensatory damages for breach of contract, as well as declaratory and injunctive relief.

## PARTIES

26.     Plaintiff Promotional Headwear International is a Kansas corporation, with its principal place of business in Kansas.

27.     Defendant The Cincinnati Insurance Company, Inc., is an Ohio corporation, with its principal place of business in Cincinnati, Ohio.

## JURISDICTION AND VENUE

28.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

29.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's causes of action occurred in this judicial district and

division. The Policy at issue covers Plaintiff's facilities located in the State of Kansas, and Plaintiff purchased the Policy from an insurance broker located in the State of Kansas.

## FACTUAL BACKGROUND

30.     COVID-19 and the Stay at Home Orders have forced Plaintiff to suspend its operations.  Its facility is located in Lenexa, Kansas. There have been 403 confirmed cases of COVID-19 in Johnson County as of the date of this filing, including at least 21 in Lenexa.

31.     Effective at 12:01 a.m. on March 24, 2020, Johnson County, Kansas issued a stay-home order to mitigate the spread of COVID-19 in Johnson County on the basis of a confirmed outbreak and person-to-person spread of COVID-19 in the United States, Kansas, and Johnson County.[1] The Johnson County Order specifically recognized that COVID-19 spreads easily from person to person and may result in serious illness or death. It further identified COVID-19 as a public disaster affecting life, health, property, and the public peace. The Johnson County Order was issued to mitigate and slow the spread of COVID-19 in the community.

32.     Effective at 12:01 a.m. on March 28, 2020, the Kansas Governor issued an executive order establishing a statewide "stay-home" order in conjunction with the Kansas Essential Function Framework for COVID-19 response efforts, superseding the Johnson County Order. The Kansas Order directed all Kansas to stay in their homes to slow the spread of COVID-19.[2]  The purpose of the Kansas Order is to "mitigate the spread of COVID-19 throughout Kansas"

---

[1]     https://www.jocogov.org/sites/default/files/documents/CMO/JoCo%20Public%20Health%20Officer%20Stay%20at%20Home%20Order%203-22-20.pdf

[2]     https://www.coronavirus.kdheks.gov/DocumentCenter/View/873/Essential-Activities-and-Essential-Functions-PDF---4-15-20

as it recognized the confirmed presence of positive cases in 31 counties.[3] On April 16, 2020, the Kansas Order was extended to May 3, 2020 and remains in effect.[4]

33.     As of April 17, 2020, at least 42 states and countless local governments have issued substantially similar directives. The purpose of these orders is to mitigate and slow the spread of COVID-19.

34.     According to the CDC, everyone is at risk of getting COVID-19. The virus can spread by respiratory droplets when an infected person coughs, sneezes, or talks. A person can become infected from respiratory droplets or potentially by touching a surface or object that has the virus on it and then by touching the mouth, nose, or eyes.[5] According to studies, the virus can live on surfaces for several days if not longer.[6]

35.     In addition, some scientific publications have reported finding COVID-19 in the air.  The New England Journal of Medicine reported finding that experimentally-produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in infectivity during a 3-hour period of observations. "Aerosols from infected persons may therefore pose an inhalation threat even at considerable distances and in enclosed spaces…."[7]

36.     A consensus appears to be emerging that COVID-19 can travel through the air via aerosols. For example, aerosol scientist Lidia Morawska of the Queensland University of Technology in Brisbane, Australia told *Nature* that, "In the minds of scientists working on this, there's absolutely no doubt that the virus spreads in the air. This is a no-brainer."[8]

---

[3]     https://governor.kansas.gov/wp-content/uploads/2020/03/EO20-16.pdf
[4]     https://www.coronavirus.kdheks.gov/DocumentCenter/View/132/Executive-Order-20-24-Statewide-Stay-Home-Order-PDF---4-16-20
[5]     https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf
[6]     https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf
[7]     https://www.nejm.org/doi/full/10.1056/NEJMc2009324
[8]     https://www.nature.com/articles/d41586-020-00974-w

37.     An April 2020 study published in the journal *Emerging Infectious Diseases* found a wide distribution of COVID-19 on surfaces and in the air about *13 feet* from patients in two hospital wards in Wuhan, China, leading the authors to conclude that the virus spreads in aerosols in addition to large respiratory droplets. The investigators found evidence of the virus in swabs of floors, computer mice, trash bins, bed handrails, patients' face makes, health workers' personal protective equipment, and air vents.[9]

38.     The authors also surmised that the high rate of positivity for floor samples in the hospital strongly suggest that droplets fall to the ground and then are spread via patients' shoes. For example, every sample tested from the pharmacy floor tested positive for COVID-19 even though no patients were housed there.[10]

39.     Another study conducted in Wuhan indicates that staff movement, floor cleaning, and the removal of personal protective equipment could transmit the virus through the re-suspension of virus-contaminated aerosols.[11]

40.     Kimberly Prather, an aerosol chemist at the University of California, San Diego told *Science* magazine: "I'm relieved to see aerosolization is accepted. This added airborne pathway helps explain why it is spreading so fast."[12]

41.     Aerosol particles are held in the air by physical and chemical forces. The suspended particles remain for *hours or more*, depending on factors such as heat and humidity. If virus particles can be suspended in air for more than a few seconds, like, for instance, the measles virus

---

[9]      https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces

[10]     https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces

[11]     https://www.biorxiv.org/content/10.1101/2020.03.08.982637v1

[12]     https://www.sciencemag.org/news/2020/04/you-may-be-able-spread-coronavirus-just-breathing-new-report-finds#

can, then anyone passing through could become infected by a pathogenic aerosol cloud. And the virus can travel long distances and land on surfaces, only to be stirred back up into the air later by cleaning or other disturbances.

42.     The SARS virus that caused a 2003 epidemic is a coronavirus and is similar to COVID-19. As a result, the behavior of SARS during the 2003 epidemic provided evidence about any aerosol risk from COVID-19.

43.     A 2014 analysis published in the journal *Clinical Infectious Diseases* investigated a seemingly puzzling outbreak in a Hong Kong apartment complex whose residents had not been in close contact with each other.[13] The study found that "airborne spread was the most likely explanation, and the SARS coronavirus could have spread over a distance of 200 meters," or about 600 feet.[14]

44.     The implications of airborne spread of the virus are extremely serious. Airborne spread means that the virus can travel long distances from any infected person. It can then infect someone who unknowingly walks through a pathogenic cloud. It can also infect someone by settling on a physical surface, which someone touches and later becomes infected. And regardless of the transmission method, the evidence suggests that COVID-19 can be transmitted by shoes even once it reaches the ground.

45.     State and local governments have determined that without the Stay at Home Orders, COVID-19 could spread rampant throughout the community.

46.     The Stay at Home Orders in and around Plaintiff's place of business also explicitly acknowledge that COVID-19 causes direct physical damage and loss to property:

---

[13]     https://academic.oup.com/cid/article/58/5/683/365793
[14]     *Id.*

a. the Johnson County, Kansas Order states that COVID-19 "endanger[s] health, safety and welfare of persons and **property** within the border of Johnson County, Kansas" and that it "remains a public disaster affecting life, healthy, **property**, and the public space.[15]  (emphasis added);

b. the City of Kansas City, Missouri, issued Order 20-01 in response to the pandemic, which states that "the City wishes to employ all means available under the law to protect public life, health, safety and **property** to limit the development, contraction and spread of COVID-19"[16] (emphasis added).

47.  In order to protect itself against risks like COVID-19, Plaintiff purchased the Policy from Defendant. The Policy was in effect at the time of the outbreak and remains in effect today. Plaintiff paid all premiums required by the Policy.

48.  Plaintiff is the Named Insured under the Policy, which remains in force.

49.  Defendant is the effective and liable insurer of the Policy and policies meeting the class definition.

50.  Generally, under property insurance policies like those issued by Defendant to Plaintiff and class members, the insuring agreements provide coverage for all risks of physical loss or damage to property, unless specifically excluded.

51.  The Policy is an "all-risk" policy. It covers "direct 'loss' unless the 'loss' is excluded of limited" by the Policy.

52.  The Policy does not exclude or limit coverage for losses from viruses or communicable diseases like COVID-19. Nor does it contain a pandemic exclusion clause.

---

[15]     https://www.jocogov.org/sites/default/files/documents/CMO/JoCo%20Public%20 Health%20Officer%20Stay%20at%20Home%20Order%203-22-20.pdf

[16]     http://mediaassets.kshb.com/NWT/Sam/Mayor%20Lucas%20Stay%20at%20Home%20 Order.pdf?_ga=2.87564241.83785035.1587504680-1549958454.1581544124

53.     The risk of a virus like COVID-19 was foreseeable to, if not foreseen by, insurance companies like the Defendant. The Insurance Services Office ("ISO"), an organization that provides policy writing services to insurers, has recognized for years that a virus can constitute physical damage to property. Specifically, in 2006, it announced the submission of an exclusion of loss "due to disease-causing agents such as viruses and bacteria."

54.     In connection with circulating the virus exclusion, it sent the following statement to state insurance regulators:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

55.     Despite the availability of a specific exclusion for viruses, Plaintiff's Policy contains no such exclusion. Nor does Plaintiff's Policy contain an exclusion for "pandemics," "communicable disease," or anything similar.

56.     Because damage due to viruses constitute physical damage and loss under the Policy, and the Stay at Home Orders have caused Plaintiff to have lost the use of its premises for their intended purpose, Plaintiff's losses are covered under the Policy. Moreover, to mitigate further losses, as required by the Policy, Plaintiff suspended operations when officials announced that COVID-19 posed a risk of causing further physical damage and loss.

57.     The Policy provides coverage for several different types of losses arising from COVID-19 that are relevant here through specific Coverage Extensions:

58.     Defendant is obligated to pay for actual loss of **"Business Income"** sustained due to the necessary suspension of operations caused by direct physical loss or damage. Exhibit A at 74. "Business Income" means net income (net profit or loss before income taxes) that would have been earned or incurred in the absence of "loss" as well as continuing normal operating expenses, including payroll. *Id.* at 81. Coverage lasts during the "period of restoration" – beginning at the time of the direct loss and running through the earlier of the date the property is repaired or resumed at a new permanent location. *Id.* at 82. A "slowdown or cessation" of business activities constitutes a "suspension" under the Policy. *Id.* Plaintiff has suffered lost Business Income because it has suspended operations of its business due to COVID-19.

59.     Defendant also agreed to provide coverage from an interruption to business caused by an order from a **"Civil Authority."** Exhibit A at 75. Specifically, Defendant agreed to "pay for the actual loss of 'Business Income'" that Plaintiff sustained and "necessary Extra Expense" caused by action of civil authority that prohibits access to" the Covered Property when, due to physical damage to property near the Covered Property, the civil authority prohibits access to property immediately surrounding the damaged property, the Covered Property is within the prohibited area, and the civil authority action is taken "in response to dangerous physical conditions." *Id.* Access has been restricted to the Covered Property due to the presence and threat of COVID-19 in the immediate surrounding areas and related Stay-at-Home Orders.

60.     Defendant also agreed to pay for **"Extra Expense."** Exhibit A at 74. Extra Expenses are expenses to avoid or minimize suspension of business whether or not operations are able to continue and to repair or replace property. *Id.* Plaintiff has suffered Extra Expenses because it has suspended operations due to COVID-19 to prevent physical damages to the premises by the presence or proliferation of the virus and the physical harm it could cause persons present there.

61. The Policy also provides "**Ingress and Egress**" coverage, which requires the insurer to pay for actual loss of Business Income sustained by the prevention of existing ingress or egress at the premises. Exhibit A at 77. To mitigate the spread of COVID-19, Plaintiff, employees, customers, and others have been unable to enter the premises to perform daily operations.

62. Finally, the Policy also provides **"Sue and Labor"** coverage, which requires the insured to "[t]ake all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim" in the event of a loss or damage. Exhibit A at 78. Plaintiff has taken such steps by, for example, complying with the Stay-at-Home Orders.

63. Losses caused by COVID-19 and the related state and local Stay at Home Orders triggered these provisions of Defendant's Policy. Specifically, Plaintiff's operations have been suspended, and it has lost revenue and business opportunities because it has been unable to fulfill or take orders for its apparel.

64. Plaintiff submitted a claim to Defendant for coverage under the Policy, but Defendant has denied Plaintiff's claim and/or requested information not required to evaluate the claim in order to effectuate delay and denial.

## CLASS ACTION ALLEGATIONS

65. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of himself and all others similarly situated, and seeks to represent the following nationwide classes:

  a. **Nationwide Declaratory Judgment and Injunctive Class.** All businesses subject to a Stay at Home Order that are covered by one of the Defendant's

policies which contains **Business Income, Civil Authority, Extra Expense, Ingress or Egress,** and/or **Sue and Labor** coverage on terms similar to the Plaintiff's policy ("Policies") which were in effect during the COVID-19 pandemic.

b. **Nationwide Breach Class.** All policyholders of Defendant who made a claim and were denied coverage under one of Defendant's Policies due to COVID-19.

c. **Kansas Subclass.** All policyholders who purchased one of Defendant's Policies in Kansas and was denied coverage due to COVID-19.

Excluded from the Class is the Defendant, any entity in which the Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsel's firms, and any Judge to whom this case is assigned, and his or his immediate family.

66.     Plaintiff's Classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

67.     **Numerosity**.  COVID-19 has impacted thousands of businesses across the country and Defendant is a nationwide insurer with, on information and belief, hundreds or more policies issued with the relevant provisions.  Consequently, the Classes each number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied.  Moreover, because the members of the Classes are geographically dispersed across the country, and members of the Kansas Subclass are geographically dispersed across the state, if not elsewhere, joinder of all Class members in a single action is impracticable. Class members and Kansas Subclass

members may be informed of the pendency of this class action through direct mail or other means based on Defendant's records of its policyholders.

68.     **Commonality**. There are questions of fact and law common to the Classes that predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendant's actions include, without limitation, the following:

a.   Do the Policies cover losses resulting from the COVID-19 pandemic?

b.   Do the Policies cover losses resulting from state and local Stay At Home Orders requiring the suspension or reduction in business?

c.   Has Defendant wrongfully denied claims for business losses resulting from COVID-19 and/or the Stay at Home Orders?

d.   Does the **Business Income** coverage of the Policies cover losses caused by suspension of business due to COVID-19 and/or the Stay-at-Home Orders?

e.   Does the **Civil Authority** coverage of the Policies cover losses caused by suspension of business due to Stay-at-Home Orders issued by state and local governments?

f.   Does the **Extra Expense** coverage of the Policies cover losses incurred to minimize the harm to Plaintiff and members of the Class' premises because of COVID-19 and/or the Stay-at-Home Orders?

g.   Does the **Ingress and Egress** coverage of the Policies cover the losses caused by Plaintiff and the Class Members' inability to access their premises?

h.   Does the **Sue and Labor** coverage of the Policies cover losses caused by suspension in business due to COVID-19 and/or the Stay-at-Home Orders?

i.   Has Defendant breached its Policies by refusing to cover COVID-19 related losses?

j.   Are Class members entitled to reasonable attorneys' fees and expenses?

69.     **Predominance.** The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein. Specifically, thousands of business are

impacted by Defendant's denial of coverage for COVID-19 losses and their claims arise from a common factual predicate, which is the nationwide shutdown and suspension of activities due to the virus.

70.    **Typicality.** Plaintiff's claims are typical of those of the Classes as Plaintiff was subject to the same or similar policy provisions and the losses for all members relate to COVID-19 and the related closure orders and the claims arise from the same legal theories.

71.    **Superiority**. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the Class and Kansas Subclass. The presentation of separate actions by individual Class members and Kansas Subclass members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests.

72.    **Adequacy**. Plaintiff is an adequate representative of the Class and Kansas Subclass because he is a member of the Class and its interests do not conflict with the interests of those it seeks to represent. The interests of the Class members will be fairly and adequately protected by Plaintiff and its counsel, who have extensive experience prosecuting complex class litigation.

73.    **Declaratory Relief and certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure**. On information and belief, Defendant has refused, or intends to refuse, coverage due to COVID-19 business interruption and other covered losses for all, or most, policyholders with covered Policies and final injunctive and/or declaratory relief mandating that Defendant cover the losses of Class members is appropriate respecting the class as a whole.

74.    **Issue Class and Modification of Class Definitions and Creation of Subclasses**. In the alternative, Plaintiff reserves the right to seek certification of one or more common issues

pursuant to Rule 23(c)(4). In addition, Plaintiff reserves the right to modify the definitions of the class and/or create subclasses either by amendment to the complaint or by motion for class certification, including but not limited to subclasses for policyholders with each of the following Policy provisions: **Business Income, Civil Authority, Extra Expense, Ingress or Egress** and/or **Sue and Labor** and/or other subclasses as may be appropriate or necessary.

## COUNT I: DECLARATORY AND INJUNCTIVE RELIEF – BUSINESS INCOME
### (On behalf of Nationwide Declaratory Judgment and
### Injunctive Class and Kansas Subclass)

75. The preceding paragraphs are incorporated by reference as if fully alleged herein.

76. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

77. An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies. On or about March 20, 2020, Plaintiff requested coverage for COVID-19 related losses through its agent. Defendant responded with a letter seeking information that is not reasonably necessary to evaluate its claim. Defendant is in breach of its obligations by refusing to provide coverage despite having sufficient information to evaluate and pay the claim. Moreover, upon information and belief, Defendant has refused other, similar claims claiming that COVID-19 losses are not covered by the Policy.

78. Plaintiff contends that Defendant has breached the Policies in the following respects:

    a. Plaintiff and the class have suffered losses covered by the Business Income coverage in the Policies.

    b. Defendant is obligated to pay Plaintiff and the class for those losses.

    c. Defendant has failed to pay Plaintiff and the class for those losses.

18

79.     Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

80.     Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Business Income Coverage Extension; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT II: BREACH OF CONTRACT – BUSINESS INCOME
### (On behalf of Nationwide Breach Class and Kansas Subclass)

81.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

82.     Plaintiff and the class purchased property coverage policies from Defendant.

83.     The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

84.     Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim. Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

85.     Plaintiff and the class have sustained a loss under the Business Income Coverage in the Policies arising from the COVID-19 virus and associated state and local Stay at Home orders.

86.     Defendant has not agreed to pay the claim for Business Income or requested a proof of loss. Instead, Defendant has requested information not necessary to determine coverage.

87.     Defendant has denied claims for Business Income related to COVID-19 on a uniform and class-wide basis, in breach of the policies.

88.     As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

### COUNT III: DECLARATORY AND INJUNCTIVE RELIEF – CIVIL AUTHORITY
**(On behalf of Nationwide Declaratory Judgment and
Injunctive Class and Kansas Subclass)**

89.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

90.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

91.     An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

92.     Plaintiff contends that Defendant has breached the Policies in the following respects:

      a.     Plaintiff and the class have suffered losses covered by the Civil Authority coverage in the Policies.

      b.     Defendant is obligated to pay Plaintiff and the class for those losses.

      c.     Defendant has failed to pay Plaintiff and the class for those losses.

93.     Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

94.     Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Civil Authority

coverage in the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT IV: BREACH OF CONTRACT – CIVIL AUTHORITY
### (On behalf of Nationwide Breach Class and Kansas Subclass)

95.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

96.     Plaintiff and the class purchased property coverage policies from Defendant.

97.     The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

98.     Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim.  Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

99.     Plaintiff and the class have sustained a loss under the Civil Authority coverage in the Policies arising from the COVID-19 virus and associated state and local Stay-at-Home orders.

100.    Defendant has not agreed to pay the claim for Civil Authority or requested a proof of loss. Instead, Defendant has requested information not necessary to determine coverage.

101.    Defendant has denied claims for recovery under the Civil Authority coverage in the Policies related to COVID-19 and the Stay at Home Orders on a uniform and class-wide basis, in breach of the Policies.

102.    As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## COUNT V: DECLARATORY AND INJUNCTIVE RELIEF – EXTRA EXPENSE
### (On behalf of Nationwide Declaratory Judgment and
### Injunctive Class and Kansas Subclass)

103.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

104.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

105.     An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

106.     Plaintiff contends that Defendant has breached the Policies in the following respects:

      a.      Plaintiff and the class have suffered losses covered by the Extra Expense coverage in the Policies.

      b.      Defendant is obligated to pay Plaintiff and the class for those losses.

      c.      Defendant has failed to pay Plaintiff and the class for those losses.

107.     Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

108.     Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Extra Expense coverage in the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

### COUNT VI: BREACH OF CONTRACT – EXTRA EXPENSE
**(On behalf of Nationwide Breach Class and Kansas Subclass)**

109.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

110.     Plaintiff and the class purchased property coverage policies from Defendant.

111.    The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

112.    Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim.  Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

113.    Plaintiff and the class have sustained a loss under the Extra Expense coverage in the Policies arising from the COVID-19 virus and associated state and local Stay-at-Home orders.

114.    Defendant has not agreed to pay the claim for Extra Expense or requested a proof of loss. Instead, Defendant has requested information not necessary to determine coverage.

115.    Defendant has denied claims for recovery under the Extra Expense coverage in the Policies related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

116.    As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## COUNT VII: DECLARATORY AND INJUNCTIVE RELIEF – INGRESS AND EGRESS
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class and Kansas Subclass)

117.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

118.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

119.    An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

120.    Plaintiff contends that Defendant has breached the Policies in the following respects:

a.      Plaintiff and the class have suffered losses covered by the Ingress and Egress coverage in the Policies.

b.      Defendant is obligated to pay Plaintiff for those losses.

c.      Defendant has breached its obligation to pay the Plaintiff and the class for those losses.

121.    Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

122.    Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Ingress and Egress coverage in the Policies; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

**COUNT VIII: BREACH OF CONTRACT – INGRESS AND EGRESS**
**(On behalf of Nationwide Breach Class and Kansas Subclass)**

123.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

124.    Plaintiff and the class purchased property coverage policies from Defendant.

125.    The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

126.    Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim.  Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

127. Plaintiff and the class have sustained a loss under the Ingress and Egress coverage in the Policies arising from the COVID-19 virus and associated state and local Stay-at-Home orders.

128. Defendant has not agreed to pay the claim under the Ingress and Egress coverage or requested a proof of loss. Instead, Defendant has requested information not necessary to determine coverage.

129. Defendant has denied claims for recovery under the Ingress and Egress coverage related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

130. As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## COUNT IX: DECLARATORY AND INJUNCTIVE RELIEF – SUE AND LABOR
### (On behalf of Nationwide Declaratory Judgment and
### Injunctive Class and Kansas Subclass)

131. The preceding paragraphs are incorporated by reference as if fully alleged herein.

132. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

133. An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other hand, concerning the respective rights and duties of the parties under the Policies.

134. Plaintiff contends that Defendant has breached the Policies in the following respects:

      a.      Plaintiff and the class have suffered losses covered by the Sue and Labor provision in the Policies.

      b.      Defendant is obligated to pay Plaintiff and the class for those losses.

      c.      Defendant has not paid for those losses and is in breach.

135.     Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the policies so that future controversies may be avoided.

136.     Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Sue and Labor provision; and (2) ordering Defendant to comply with the terms of the Policies in regards to coverage decisions.

## COUNT X: BREACH OF CONTRACT – SUE AND LABOR
### (On behalf of Nationwide Breach Class and Kansas Subclass)

137.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

138.     Plaintiff and the class purchased property coverage policies from Defendant.

139.     The Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

140.     Plaintiff and the class substantially performed their obligations under the terms of the Policies including giving Defendant notice of the claim.  Alternatively, Defendant has waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

141.     Plaintiff and the class have sustained a loss covered by the Sue and Labor provision in the Policies arising from the COVID-19 virus and associated state and local Stay at Home orders.

142.     Defendant has not agreed to pay the claim under the Sue and Labor provision or requested a proof of loss. Instead, Defendant has requested information not necessary to determine coverage.

143.     Defendant has denied claims for recovery under the Sue and Labor provision related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

144.     As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

a.     That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

b.     For a judgment against Defendant for the causes of action alleged against it;

c.     For compensatory damages in an amount to be proven at trial;

d.     For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy;

e.     For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policy;

f.     For pre-judgment and post-judgment interest at the maximum rate permitted by law;

g.     For Plaintiff's attorney's fees;

h.     For Plaintiff's costs incurred; and

i.     For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


Date: April 24, 2020                              Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

*s/ Patrick J. Stueve*
Patrick J. Stueve, KS Bar # 13847
Bradley T. Wilders, D. Kan # 78301
Curtis Shank, KS Bar # 26306
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:     816-714-7100
Facsimile:     816-714-7101
Email:          stueve@stuevesiegel.com
Email:          wilders@stuevesiegel.com
Email:          shank@stuevesiegel.com

**LANGDON & EMISON LLC**

J. Kent Emison       D. Kan. #78360
911 Main Street
PO Box 220
Lexington, Missouri 64067
Phone: (660) 259-6175
Fax: (660) 259-4571
kent@lelaw.com

**MILLER SCHIRGER LLC**

John J. Schirger         D. Kan. #78228
Matthew W. Lytle        D. Kan. #78109
Joseph M. Feierabend   D. Kan. #78350
4520 Main Street, Suite 1570
Kansas City, MO 64111
Telephone: (816) 561-6500
Facsimile:   (816) 561-6501
jschirger@millerschirger.com
mlytle@millerschirger.com
jfeierabend@millerschirger.com

**SHAFFER LOMBARDO SHURIN, P.C.**

Richard F. Lombardo  KS#22326
Dawn M. Parsons  KS#16346
Michael F. Barzee  KS#27217
Rachael D. Longhofer  KS#25451
2001 Wyandotte Street
Kansas City, MO 64108
816-931-0500
816-931-5775 (Fax)
rlombardo@sls-law.com
dparsons@sls-law.com
mbarzee@sls-law.com
rlonghofer@sls-law.com

*Attorneys for Plaintiff and the Proposed Classes*