IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PROMOTIONAL HEADWEAR INT'L, individually and on behalf of all others similarly situated | ) ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 20-cv-2211 |
| vs. | ) ) | |
| THE CINCINNATI INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT THE CINCINNATI INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Pursuant to Fed.R.Civ.P. 12(b)(6) and L.R. 7.1, The Cincinnati Insurance Company ("Cincinnati") moves to dismiss this case because the Plaintiff fails to state a claim on which relief may be granted. Based on the allegations of the Class Action Complaint ("the Complaint") and the language of Cincinnati's insurance policy ("the Policy"), Plaintiff cannot prove its claim.

## OVERVIEW AND SUMMARY OF ARGUMENT

The Policy at issue supplies property insurance coverage. It is designed to indemnify loss or damage to property, such as in the case of a fire or storm. Coronavirus (or "COVID-19") does not damage property; it hurts people. Plaintiff demands the Policy's Business Income, Extra Expense, Civil Authority, Ingress and Egress, and so-called "Sue and Labor" coverages. But, because they are part of a property insurance policy, these coverages protect Plaintiff only for income losses tied to physical damage to property, not for economic loss caused by governmental or other efforts to protect the public from disease. These coverages do not apply in the absence of direct physical loss to property. The Plaintiff's allegations establish that it has not sustained any direct physical loss to property. Rather, Plaintiff alleges that the Coronavirus pandemic spreads

1

COVID-19 among humans, not that there was any direct physical loss to property. In addition to the requirement that there be direct physical loss to property, the Civil Authority coverage requires a government order prohibiting access to Plaintiff's premises. Similarly, the Ingress and Egress coverage requires direct physical loss at a property contiguous to the Plaintiff's property that prevents ingress or egress at Plaintiff's property. The orders that the Plaintiff relies on, referred to in the Complaint as "the Stay at Home Orders," do not do this. Rather, those orders are directed to the need to keep people apart by keeping them at home.

At bottom, Plaintiff bears the initial burden of showing actual direct physical loss to property. This is always necessary to make a prima facia case for property insurance coverage. Because Plaintiff fails to allege direct physical loss, it ends up asking for a vast extension of Kansas insurance law that would create coverage from whole cloth. This should not be permitted.

For all of these reasons, and for the other reasons established below, Plaintiff's Complaint should be dismissed.

## STATEMENT OF FACTS

### I.   Allegations of the Complaint

The Complaint includes the following allegations:

- Plaintiff is a wholesale distributor of headwear, bags, aprons, towels, and other products, including custom promotional caps sold to businesses across the globe for marketing purposes. Plaintiff operates under the tradename Sportsman Cap & Bag . . . . As a result of COVID-19 and Stay at Home Orders (as defined below), Plaintiff has been forced to greatly reduce its operations. (Complaint ("Compl.") at ¶ 1).[1]

---

[1] Plaintiff did not attach copies of the referenced Stay at Home Orders to the Complaint. However, the Court may take judicial notice of those orders and other matters of public record. *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (district court may take judicial notice of facts that are a matter of public record without converting a motion to dismiss into a motion for summary judgment); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (collecting cases).

- In an effort to combat the virus and slow the spread of COVID-19, state and local governments across the country have imposed directives requiring residents to remain in their homes except to perform certain "essential" activities. . . . (Compl. at ¶ 10).

- The state and local directives typically require businesses deemed "non-essential" to be closed and in-person work is not permitted. But even businesses classified as "essential" have been severely impacted by the pandemic. For example, "essential" businesses have had to increase the frequency of cleaning, reduce hours, install new protective barriers between employee and customer, and provide personal protective equipment to its workforce. But even with those precautions, many such business have had great difficulty retaining employees who fear becoming infected at work. (Compl. at ¶ 11).

- Johnson County and the State of Kansas [where Plaintiff is based] have issued stay-at-home orders, as have the neighboring City of Kansas City, Missouri and State of Missouri . . . . These Stay at Home Orders remain in effect and have caused the suspension of nonessential and essential businesses. (Compl. at ¶ 13).

- . . . . Because of the Stay at Home Orders and the transmission of COVID-19, several of [Plaintiffs] employees could not show up to work and risk becoming infected, preventing Plaintiff from meeting its sales targets. In a short period of time these events have caused the loss of nearly 95% of Plaintiff's sales. (Compl. at ¶ 14).

- Plaintiff's premises likely have been infected with COVID-19. It has suffered direct physical loss to the property. Although ingress and egress to the property currently *is limited* due to the Stay at Home Orders and transmission concerns . . . . It is likely customers, employees, and/or other visitors to the insured property over the last two months were infected with the coronavirus and thereby infected the insured property with the coronavirus. (Compl. at ¶ 15) (emphasis added).

- The transmission of COVID-19 and the Stay at Home Orders have otherwise affected Plaintiff's or other Class members' businesses. For example, customers cannot access the property due to the Stay at Home Orders or fear of being infected with or spreading COVID-19. Suppliers have also been similarly restricted by the pandemic. (Compl. at ¶ 16).

- Plaintiff . . . . purchased property insurance from Defendant, bearing Policy No. 05ECP0562300 (the "Policy"), that did not exclude pandemic coverage. A true and accurate copy of the Policy is attached hereto as Exhibit A. (Compl. at ¶ 17).

- The Policy is an all-risk policy, meaning it covers all losses for direct "loss" to Covered Property unless specifically excluded. "Loss" is defined as "accidental physical loss or accidental physical damage." (Compl. at ¶ 18) (internal citations omitted).

- [T]he Policy also provides coverage for: losses sustained due to the necessary suspension of operations ("Business Income" coverage); interruption of business caused by an order from a civil authority ("Civil Authority" coverage); expenses incurred to minimize suspension of business ("Extra Expense" coverage); losses caused by the prevention of existing ingress or egress at the premises ("Ingress or Egress" coverage); and expenses necessary to protect Covered Property from further damage in the event of a loss ("Sue and Labor" coverage) (Compl. at ¶ 20) (internal citations and sub-numbering omitted).

- The Policy defines "suspension" to include the "slowdown or cessation of your business activities *[and [t]hat a part or all of the "premises" is rendered untenantable.*]" (Compl. at ¶ 21) (internal citations omitted).[2]

- In addition, the Policy requires Plaintiff to "[t]o take all reasonable steps to protect the Covered Property from further damage" when a loss occurs, which in this instance required Plaintiff to suspend operations to reduce the spread of COVID-19 and further losses occasioned by its spread on Plaintiff's premises. (Compl. at ¶ 22) (internal citations omitted).

- On or about March 2020, Plaintiff notified Defendant of a loss covered by the Policy, seeking coverage related to COVID-19. . . . Upon information and belief, Defendant has uniformly refused to pay its insureds under its standard policy for losses related to COVID-19. Defendant is in breach of its obligations by refusing to provide coverage despite having sufficient information to evaluate and pay the claim. (Compl. at ¶ 23) (internal citations omitted).

- According to the CDC, everyone is at risk of getting COVID-19. The virus can spread by respiratory droplets when an infected person coughs, sneezes, or talks. A person can become infected from respiratory droplets or potentially by touching a surface or object that has the virus on it and then by touching the mouth, nose, or eyes. According to studies, the virus can live on surfaces for several days if not longer. (Compl. at ¶ 34) (internal citations omitted).

---

[2] Plaintiff selectively omits the emphasized language, which is an integral part of the Policy's definition of "suspension". (*See* Compl. Ex. A, p. 43). As discussed herein, the Court may consider the language of the Policy, which is an exhibit to the Complaint. Additionally, under applicable law, where the allegations of the Complaint conflict with an exhibit, the exhibit controls. *See, e.g., GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997). No facts alleged in the Complaint show the premises was untenantable. But, even if it were, the Complaint fails as a matter of law because it does not allege physical loss to property caused by the Coronavirus, or otherwise.

- The Stay at Home Orders in and around Plaintiff's place of business also explicitly acknowledge that COVID-19 causes direct physical damage and loss to property: the Johnson County, Kansas Order states that COVID-19 "endanger[s] health, safety and welfare of persons and **property** within the border of Johnson County, Kansas" and that it "remains a public disaster affecting life, healthy, **property**, and the public space [and] the City of Kansas City, Missouri, issued Order 20-01 in response to the pandemic, which states that "the City wishes to employ all means available under the law to protect public life, health, safety and **property** to limit the development, contraction and spread of COVID-19". (Compl. at ¶ 46) (emphasis added by Plaintiff; internal citations and sub-numbering omitted).

- The Policy does not exclude or limit coverage for losses from viruses or communicable diseases like COVID-19. Nor does it contain a pandemic exclusion clause. (Compl. at ¶ 52).

- Because damage due to viruses constitute physical damage and loss under the Policy, and the Stay at Home Orders have caused Plaintiff to have lost the use of its premises for their intended purpose, Plaintiff's losses are covered under the Policy. Moreover, to mitigate further losses, as required by the Policy, Plaintiff suspended operations when officials announced that COVID-19 posed a risk of causing further physical damage and loss. (Compl. at ¶ 56).

- . . . . Access has been restricted to the Covered Property due to the presence and threat of COVID-19 in the immediate surrounding areas and related Stay-at-Home Orders. (Compl. at ¶ 59).

- . . . . Plaintiff has suffered Extra Expenses because it has suspended operations due to COVID-19 to prevent physical damages to the premises by the presence or proliferation of the virus and the physical harm it could cause persons present there. (Compl. at ¶ 60).

- . . . . To mitigate the spread of COVID-19, Plaintiff, employees, customers, and others have been unable to enter the premises to perform daily operations. (Compl. at ¶ 61).

- Losses caused by COVID-19 and the related state and local Stay at Home Orders triggered these provisions of Defendant's Policy. Specifically, Plaintiff's operations have been suspended, and it has lost revenue and business opportunities because it has been unable to fulfill or take orders for its apparel. (Compl. at ¶ 63).

5

The Complaint contains ten counts, all of which are based on contract interpretation: 1) Declaratory and Injunctive Relief – Business Income; 2) Breach of Contract – Business Income; 3) Declaratory and Injunctive Relief – Civil Authority; 4) Breach of Contract – Civil Authority; 5) Declaratory and Injunctive Relief – Extra Expense; 6) Breach of Contract – Extra Expense; 7) Declaratory and Injunctive Relief – Ingress and Egress; 8) Breach of Contract – Ingress and Egress; 9) Declaratory and Injunctive Relief – Sue and Labor; 10) Breach of Contract – Sue and Labor Coverage.

The Complaint seeks class certification for three nationwide classes, including the "Nationwide Declaratory Judgment and Injunctive Class," "Nationwide Breach Class," and "Kansas Subclass." (*See* Compl. at ¶¶ 65-74).[3]

## II.     Plaintiff's Policy

Cincinnati issued Policy No. ECP 056 23 00 to PROMOTIONAL HEADWEAR INTERNATIONAL for the policy period December 15, 2019 to January 1, 2023. For present purposes, the pertinent forms in the Policy are form FM 101 05 16 (Building and Personal Property Coverage Form), and form FA 213 05 16 (Business Income (and Extra Expense) Coverage Form). (*See* Compl. Ex. A, Policy, pp. 4-43 & 75-83).[4] The Building and Personal Property Coverage Form, FM 101 05 16, is the main property coverage form. The Business Income (and Extra Expense) Coverage form, FA 213 05 16, focuses on business income and extra expense coverages. Using the same language, each form supplies Business Income and Extra Expense Coverage, but only if the necessary elements for coverage are satisfied.[5]

---

[3] Cincinnati does not address Plaintiff's "Class Action Allegations" because the Complaint does not state a claim on which relief may be granted in the first instance. Cincinnati reserves the right to dispute the class allegations and to dispute class certification in the event this Court denies Cincinnati's Motion to Dismiss.

[4] Citations to page numbers of Exhibit A refer to the ECF stamped page numbers in the header of Exhibit A.

[5] Both forms contain the Business Income, Extra Expense, Civil Authority and Sue and Labor coverages at issue in the Complaint. Only form FA 213 05 16 includes Ingress and Egress coverage.

The requirement of "direct physical loss" is a core element in property insurance policies like Plaintiff's. The requirement appears in multiple places. For example, direct physical loss to the Plaintiff's property is required for Business Income and related Extra Expense coverages:

> We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown on the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

(*See* Compl. Ex. A, pp. 21-22 & 75).

Covered Cause of Loss is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (*See* Compl. Ex. A, pp. 8 & 76). "Loss" is defined, in relevant part, as physical loss. (*See* Compl. Ex. A, pp. 41 & 83). Accordingly, there is no Covered Cause of Loss, and therefore no Business Income coverage, unless the insured first establishes, among other things, that there is direct physical loss to covered property.

Therefore, the requirement of direct physical loss applies to any coverage requiring a Covered Cause of Loss. For example, the main grant of property coverage states:

> **SECTION A. COVERAGE**
> We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

(Compl. Ex. A, p. 6; *and see* Compl. Ex. A, p. 76 at Section A.3).

Also, a Covered Cause of Loss and thus direct physical loss, is an express requirement for coverage under each of the individual Extra Expense, Civil Authority, Ingress and Egress, and so-called Sue and Labor coverages Plaintiff seeks. (*See* Compl. Ex. A, pp. 22 & 75 (Extra Expense); pp. 22 & 76 (Civil Authority), p. 78 (Ingress and Egress), pp. 33-34 & 79 (Sue and Labor)).

Furthermore, while the definition of Covered Cause of Loss refers to exclusions, exclusions do not come into play unless there is direct physical loss in the first instance. *Expl. Place, Inc. v.*

*Midwest Drywall Co.*, 277 Kan. 898, 905–06, 89 P.3d 536, 541 (2004); *See, e.g., Johnson v. Studyvin*, 828 F. Supp. 877, 881 (D. Kan. 1993) (applying Kansas law).

In addition to the direct physical loss requirement, Civil Authority coverage requires an actual loss of Business Income that an insured sustains if the loss is caused by an action of a civil authority. In this regard, there is no Civil Authority coverage unless both of the following apply:

**(a)**   *Access* to the area immediately surrounding the damaged property *is prohibited* by civil authority as a result of the damage; and

**(b)**   The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the *Covered Cause of Loss* that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Compl. Ex. A, pp. 22 & 76) (emphasis added). Accordingly, Civil Authority coverage requires, among other things, direct physical loss to property other than the insured's property and prohibition of access to the insured's property as a result of that direct physical loss.

Likewise, the Ingress and Egress coverage only applies if the insured sustains actual loss of Business Income and Extra Expense "caused by the prevention of existing ingress or egress at [an insured premises] due to direct 'loss' by a *Covered Cause of Loss* at a location *contiguous to* such 'premises'." (Compl. Ex. A, p. 78) (emphasis added). Accordingly, Ingress and Egress coverage requires both a direct physical loss at a location contiguous to the insured's property and the prevention of access to the insured's property as a result of that direct physical loss.

## ARGUMENT

### I.   Motion to Dismiss Standard

Dismissal is an appropriate mechanism here because this motion presents a pure matter of law and contract interpretation.  A motion to dismiss for failure to state a claim on which relief may be granted should prevail if, after the complaint's allegations are taken as true and all reasonable inferences are made in favor of the nonmoving party, it appears beyond a doubt that

the nonmoving party cannot prove facts supporting his claim. *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). Stated another way, to survive a motion to dismiss, a complaint must contain sufficient factual matter to show the claim for relief is "plausible on its face." *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Importantly, legal conclusions and other unsupported conclusions stated in the Complaint may not be considered in determining a motion to dismiss. *Wasatch Equal.*, 820 F.3d 381, 386 ("In reviewing the complaint, we accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same, but we don't accept the nonmoving party's legal conclusions as true.") (internal citations and quotations omitted); *citing Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Hampton v. root9B Techs., Inc.*, 897 F.3d 1291, 1297 (10th Cir. 2018) (the Court "accept[s] all well-pleaded facts, as distinguished from conclusory allegations, as true.")

It is proper for the Court to consider an insurance Policy which is attached to the Complaint. *See, e.g., Wasatch Equal.*, 820 F.3d 381, 386. The Policy is considered part of the Complaint's allegations. Likewise, the Court may consider the contents of the Stay at Home Orders, which are matters of public record. *See, e.g., Johnson*, 950 F.3d at 705; *Wasatch Equal.*, 820 F.3d at 386. In any event, the Complaint incorporates the Stay at Home Orders by reference, the Orders are central to Plaintiff's claim and Cincinnati does not dispute the contents of the Orders. As such, this Court may consider the Stay at Home Orders without converting Cincinnati's Motion to Dismiss into a motion for summary judgment. *See Wasatch Equal.*, 820 F.3d at 386.

Where, as here, the Complaint's allegations are in conflict with the terms of the Policy and the Stay at Home Orders, the terms of the Policy and the Stay at Home Orders control. *See, e.g.,* *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) ("Although a party may allege in its complaint that a writing satisfies the statute [of frauds], the document controls when it is properly before the court."), *citing* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 & n. 22 (4th ed.) (Wright & Miller) (collecting cases).[6]

## II.   There Is No Direct Physical Loss and Accordingly No Business Income or Extra Expense Coverage

As shown, the Policy states that it only provides coverage for direct physical loss. But, the Complaint does not allege facts showing any direct physical loss. Accordingly, Plaintiff cannot possibly prove its claim.

### A.   There Are No Facts to Show Plaintiff's Property was Physically Altered, thus there is No Physical Loss

#### 1.   Kansas Law Requires Physical Alteration to Property; There is None Here

Plaintiff is asking that this Court create coverage from whole cloth. This is not allowed in Kansas. No case, in Kansas or elsewhere, has held that a virus constitutes direct physical loss. By contrast, numerous court decisions hold that direct physical loss requires actual, tangible, permanent, physical alteration of property. Indeed, this Court holds that Kansas law requires "physical alteration" of property to show physical loss or damage under a property insurance policy. *Great Plains Ventures, Inc. v. Liberty Mut. Fire Ins. Co.*, 161 F. Supp. 3d 970, 978 (D. Kan. 2016) (Robinson, C.J.), *reconsideration denied.*

---

[6] In the current edition (4th Ed.) of 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327, the cited material appears at footnote 22.

There, the insurer argued that cosmetic hail damage to the insured's roof did not constitute "physical loss or damage" as required by its policy because there was no attendant loss of function of the roof. *Great Plains Ventures*, 161 F. Supp. 3d at 975-976. This Court disagreed: "the phrase 'physical damage' in an insurance policy is widely accepted to mean a 'physical alteration.' Thus, the Court finds that the phrase 'physical loss or damage' provides coverage where, as here, cosmetic hail dents physically alter an insured's property." *Great Plains Ventures*, 161 F. Supp. 3d at 978 and n. 44. (*citing*, 10A *Couch on Ins.* § 148:46, *infra*, and collecting cases). The Court granted summary judgment in favor of the insured, having further found the policy's physical loss or damage provisions *unambiguously* included the hail damage. *Great Plains Ventures*, 161 F. Supp. 3d at 979.

Here, like *Great Plains Ventures*, the plain, unambiguous language of the Plaintiff's Policy's Business Income coverage requires, among other things, a suspension of Plaintiff's business caused by *direct physical loss to property* at the Plaintiff's premises. (*See* Compl. Ex. A, pp. 37 & 92). The Plaintiff seeks insurance coverage for financial losses it sustained as a result of what it summarily characterizes as "physical loss." It alleges that its distribution facility and other real estate suffered physical loss. But, this is a legal conclusion that should not affect this dismissal motion.

The Complaint's factual allegations—which *are* to be taken as true—show there was no physical loss to property. Plaintiff alleges (again, summarily) that damages due to Coronavirus constitute physical damage and loss under the Policy. (Compl. at ¶ 56). But, Plaintiff concedes it can allege no facts to show Coronavirus was on the property *at all*, let alone that it caused physical loss to property. (*See* Compl. at ¶ 15) (speculating that "[i]t is likely customers, employees, and/or other visitors to the insured property over the last two months were infected with the coronavirus

11

and thereby infected the insured property with the coronavirus.") This fact alone is fatal to Plaintiff's claim.

Even if the Coronavirus was present on the Plaintiff's premises, the facts alleged by Plaintiff and those subject to judicial notice also show the virus did not cause physical loss. The Plaintiff does not allege there has been any physical alteration to its property. Rather, Plaintiff alleges that the virus is spread person to person. (Compl. at ¶ 34). It alleges that the virus can spread by being on surfaces in a building. (Compl. at ¶ 34). It acknowledges that the focus in combating this pandemic is on human to human transmission of the virus. (Compl. at ¶ 10). Thus, Plaintiff alleges that businesses have had to "increase the frequency of cleaning, reduce hours, install new protective barriers between employee and customer, and provide personal protective equipment to its workforce." (Compl. at ¶ 11). Humans infecting humans is not direct physical loss to property.

As shown, Plaintiff asks this Court to vastly expand Kansas insurance law.  In essence, Plaintiff asserts that the Policy's direct physical loss requirement is met whenever a business suffers economic harm. On this fundamental issue, the instant case cannot be distinguished from *Great Plains Ventures* or the host of other cases holding that direct physical loss requires actual, tangible, permanent, physical alteration of property and that the direct physical loss must cause a suspension of business operations for the Business Income and Extra Expense coverages to apply.

### 2.    **American Case Law Is Overwhelmingly Consistent With** *Great Plains Ventures*

*Great Plains Venture* is consistent with the prevailing law nationally. *See, e.g.*, 10A *Couch on Ins.* § 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, *is widely held* to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental

economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.")
(Emphasis added) (collecting cases); *see also Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.,*
1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at pp. 5 & 15 (the Coronavirus damages lungs; not
printing presses.)[7]; *Mastellone v. Lightning Rod Mut. Ins. Co.,* 2008-Ohio-311, ¶ 61, 175 Ohio
App. 3d 23, 40, 884 N.E.2d 1130, 1143 (mold on building siding did not constitute physical injury
because it did not adversely affect the building's structural integrity). *See* also, *Philadelphia
Parking Auth. v. Fed. Ins. Co.,* 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (no direct physical loss
to an airport parking facility that was closed following 9/11); *Crestview Country Club, Inc. v. St.
Paul Guardian Ins. Co.,* 321 F. Supp. 2d 260, 264 (D. Mass. 2004), (modification of a hole on a
golf course because of the loss of a tree did not constitute direct physical loss to the course).

A seminal case concerning the direct physical loss requirement is *Source Food Tech., Inc.
v. U.S. Fid. & Guar. Co.,* 465 F.3d 834 (8th Cir. 2006)(applying Minnesota law).[8] *Source Food*
is factually analogous to this case. There, the insured, Source Food, was a U.S.-based supplier of
beef products that sourced its beef product production to a single supplier in Canada. *Id.* at 385.
The U.S. government imposed an embargo prohibiting the importation of Canadian beef and beef
product after a cow in Canada tested positive for mad cow disease. *Id.* Source Food lost a
truckload of beef product, which was not itself contaminated, when its Canadian supplier's truck
could not cross the border into the United States. *Id.* As a result, Source Food could not obtain
the beef product required to fill its orders and lost its most valuable customer when it was unable
to deliver the required one to two truckloads of beef product per week. *Id.*

[7] No written opinion has been issued in *Social Life* at the time of filing this brief. A copy of the hearing transcript is available through the Federal Court's filing system, PACER. A file-stamped copy of the hearing transcript reflecting the Court's ruling and rationale is attached as Exhibit B. A court considering a motion to dismiss may take judicial notice of judicial opinions and public records accessible from the internet. *Johnson,* 950 F.3d at 705.
[8] Plaintiff's Complaint relies at least in part on Stay at Home Orders issued by authorities in Kansas City, *Missouri,* which is situated in the 8th Circuit. (*See* Compl. at ¶ 46(b)).

Source Food claimed lost business income under its insurance policy. That policy, like the Policy here, covered the suspension of business operations "caused by *direct physical loss to Property*". *Id.* (Emphasis in original). Source Food argued "that the closing of the border caused direct physical loss to its beef product because the beef product was treated as though it were physically contaminated by mad cow disease and lost its function." *Id.* at 836. *Source Food* rejects this argument: "To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless." *Id.* at 838.

To the same effect is *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613 (8th Cir. 2005) (applying Minnesota law). *Pentair* rejects the insured's contention that its Taiwanese suppliers' inability to function after a loss of power caused by an earthquake constituted direct physical loss or damage. *Pentair, Inc.*, 400 F.3d at 616. *Pentair* holds that loss of use or function is relevant to determining the amount of loss, *but only once the insured first establishes physical loss or damage. Id.* ("Pentair's argument, if adopted, would mean that direct physical loss or damage is established *whenever* property cannot be used for its intended purpose.") (Emphasis in original).

While *Source Food* and *Pentair* are not binding on this Court, they are well-reasoned cases. Moreover, there are no material differences in Minnesota's and Kansas's respective decisions on pertinent insurance issues. Both states seek to apply the plain meaning of an insurance policy. *See, e.g., Great Plains Ventures*, 161 F. Supp. 3d at 976 & 979 (D. Kan. 2016); *Depositors Ins. Co. v. Dollansky,* 905 N.W.2d 513, 515 (Minn. Ct. App. 2017), aff'd, 919 N.W.2d 684 (Minn. 2018). As such, it is appropriate for this Court to follow the sound construction and application of the "direct physical loss" requirement in *Great Plains Ventures, Source Food* and *Pentair.*

Plaintiff does not allege a single fact to show any physical alteration to its property. Instead, Plaintiff alleges its employees' and customers' fear of contracting or spreading Coronavirus, together with the Stay at Home Orders, prevented it from meeting its sales target. (Compl. at ¶ 14). There is no direct physical loss to property, and thus no Business Income or Extra Expense coverage.

**B.     Coronavirus Does Not Affect the Structural Integrity of Property; it Can Be Removed by Cleaning**

Additionally, there is no direct physical loss in situations where a contaminant or substance can be cleaned. *See, e.g., Mastellone*, 2008-Ohio-311, ¶ 68; *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("[W]ith regards to Plaintiff's initial claim for cleaning, cleaning is not considered direct physical loss."); *Universal Image Prods., Inc. v. Chubb Corp.*, 703 F.Supp.2d 705, 710 (E.D. Mich. 2010) (a complete cleaning of a ventilation system was not a direct physical loss), *aff'd*, 475 Fed.Appx. 569 (6th Cir. 2012).

*Mastellone* in particular is very close, factually, to the present case. The relevant policy language in *Mastellone* was the same as that in the Cincinnati Policy. It too required "direct physical loss," also referred to in *Mastellone* as physical injury to property. *Mastellone*, 2008-Ohio-311, ¶¶ 61-62. *Mastellone* holds that mold on building siding did not constitute physical injury because it did not adversely affect the building's structural integrity. *Id.* at ¶ 68. In this context, *Mastellone* rejected the argument that dark staining on the siding was physical injury, because the staining was "only temporary and did not affect the structure of the wood." *Id.* at ¶ 63. The mold could be removed via cleaning, and its presence "did not alter or otherwise affect the structural integrity of the siding." *Id.* at ¶¶ 61-69, *citing* 10A *Couch on Ins.* § 148:46 (3d Ed.1998).

Similarly here, the alleged presence of the Coronavirus did not cause direct physical loss to property. The loss Plaintiff alleges is caused by the presence of the virus in our world, not by

any physical damage or effect on Plaintiff's building or someone else's property. Indeed, premises where the virus has been confirmed to be present, such as hospitals and nursing homes, have remained open. This is because those properties are themselves undamaged. Moreover, even if Coronavirus could cause direct physical loss to the premises, which it cannot, Plaintiff admits it has no evidence that Coronavirus was in fact present on its premises. (*See* Compl. at ¶ 15).

Moreover, even if present on Plaintiff's premises, the Coronavirus did not affect the structural integrity of the building, and it could be removed by cleaning. (*See* Compl. at ¶ 11). The Centers for Disease Control and Prevention (CDC) has instructed that the Coronavirus can be wiped off surfaces by cleaning. "The virus that causes COVID-19 can be killed if you use the right products. EPA has compiled a list of disinfectant products that can be used against COVID-19, including ready-to-use sprays, concentrates, and wipes." (*See* CDC Reopening Guidance for Cleaning and Disinfecting (4/28/2020), attached as Ex. A; *See also* CDC, *Cleaning and Disinfection for Households*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cleaning-disinfection.html (accessed June 16, 2020)).[9] Thus, as in *Mastellone*, even if there is actual presence of the Coronavirus, there is no direct physical loss because the virus either dies naturally in days, or it can be wiped away.

Plaintiff admits that cleaning will remove the Coronavirus. (*See* Compl. at ¶¶ 9-11 & 34, incl. n. 6). Therefore, Plaintiff admits there is no direct physical loss here.

## C.   The Lack of a Virus Exclusion Is Irrelevant Because There Is No Direct Physical Loss

Plaintiff's claim that coverage exists because the Policy contains no virus exclusion is legally incorrect.   An exclusion can become relevant only if Plaintiff first meets its burden of

---

[9] Again, this Court may take judicial notice of the CDC reports and other matters of public record. *Johnson*, 950 F.3d at 705.

showing that there is direct physical loss. Plaintiff cannot do so. Thus, Plaintiff cannot fulfill the threshold requirement that there be a Covered Cause of Loss. Covered Cause of Loss means all risks of direct physical loss that are neither excluded nor limited. Thus, if there is no direct physical loss in the first place, the existence or absence of a virus exclusion is irrelevant. For example, in *Ward General Insurance Services., Inc. v. Employers Fire Insurance Co.*, 114 Cal. App. 4th 548, 555 (2003), a computer database crashed. Because that was not direct physical loss, the court held it was "unnecessary to analyze the various exclusions and their application to this case." Similarly, in *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co.,* 17 F.Supp.3d 323, 333 (S.D.N.Y. 2014), a law firm closed due to a power outage. The loss of power was not a direct physical loss, so it was unnecessary to decide whether a flood exclusion applied. *See also Zinser*, No. CA2016-08-144, 2017-Ohio-5668, at ¶ 33, (12th Dist.); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 9, 751 N.Y.S.2d 4, 10 (2002).

In sum, there is no coverage here because there is no direct physical loss. Because there is no coverage, no exclusion is needed.[10]

## III.    There Is No Civil Authority Coverage

As established, the Policy's Civil Authority coverage only applies if there is a Covered Cause of Loss, meaning direct physical loss, to property other than the Plaintiffs' property. Even then, there is only Civil Authority coverage if both of these additional requirements are met: a) access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and b) the action of civil authority is taken in response to dangerous physical conditions resulting from the direct physical loss. (Compl. Ex. A, pp. 22 & 76). "[L]osses

---

[10] Plaintiff selectively quotes portions of a July 6, 2016 Circular by the Insurance Services Office, Inc. (ISO), ostensibly to show that there is coverage because the Policy does not include a virus exclusion. The quoted text is incomplete and taken out of context. It does not support Plaintiff's claim. (Compl. at ¶ 54).

due to curfew and other such restrictions are not generally recoverable. * * * If a policy provides for business interruption coverage where access to an insured's property is denied by order of civil authority, access to the property must actually be specifically prohibited by civil order, not just made more difficult or less desirable." 11A *Couch on Ins.* § 167:15.

**A.     There Is No Direct Physical Loss To Other Property**

Cincinnati has demonstrated that direct physical loss to property other than the Plaintiff's property is necessary. Courts nationwide have upheld that requirement. *See Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 2020 WL 886120, 8 (D.S.C. Feb. 24, 2020); *Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.*, 2011 WL 13214381, 6 (E.D. Tex. Mar. 30, 2011); *S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, 2008 WL 450012, 10 (S.D. Tex. Feb. 15, 2008); *United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 131 (2d Cir. 2006).

Just as the Coronavirus is not causing direct physical loss to Plaintiff's premises, it is not causing direct physical loss to other property. The Complaint fails to identify any direct physical loss, anywhere. Rather, it alleges Coronavirus and related Stay at Home Orders have ordered "non-essential" businesses closed and "severely impacted" "essential" businesses, like Plaintiff's, because, "[f]or example, 'essential' businesses have had to increase the frequency of cleaning, reduce hours, install new protective barriers between employee and customer, and provide personal protective equipment to its workforce." (Compl. at ¶ 11). No facts are alleged that demonstrate that these things happened because of direct physical loss to anybody's property. Instead, the cancellations and closings protected the public from human to human transmission of the virus.

Plaintiff also asserts that "the Stay at Home Orders in and around Plaintiff's place of business . . . explicitly acknowledge" that COVID-19 causes direct physical damage and loss to

property." (Compl. at ¶ 46). This is inaccurate. Neither of the orders Plaintiff relies on stated the Coronavirus causes "direct physical loss" or "direct physical damage" to property. However, even if they had, the meaning of the Policy's "direct physical loss" requirement is a question of law for the Court, which must be based on the language of the Policy and the facts of each individual claim—not by blanket statements calculated to trigger insurance coverage under policies that plainly do not apply to claims like Plaintiff's. Regardless, as *Great Plains Ventures, Source Food* and other authorities show, structural damage is necessary for there to be direct physical loss. Accordingly, there is no coverage here.

After properly disregarding Plaintiff's repeated legal conclusions, there are no alleged facts asserting any direct physical loss. There are no alleged facts showing any change or alteration of anybody's physical property by the Coronavirus. There are, however, as admitted in the Complaint, facts showing that the Coronavirus can be removed via cleaning. As established, this is the marker of something that is ***not*** direct physical loss. Accordingly, there is no direct physical loss to any other property as is required for Civil Authority coverage.

### B.   The Requisite Prohibition of Access Is Lacking

The Civil Authority coverage requires that access to Plaintiff's premises be prohibited by an order of Civil Authority. But, none of the government orders referenced by Plaintiff prohibit access to their premises. Based on the lack of such a prohibition here, there is no Civil Authority coverage.

This position is established by law within in the 10th Circuit, and nationally. In *S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137 (10th Cir. 2004) (applying Oklahoma law), the insured, Southern Hospitality, managed a number of hotels around the country. *S. Hosp., Inc.*, 393 F.3d at 1138.  Its revenues and profits plummeted when the FAA grounded all flights in the United States

following 9/11 because customers could not travel by air to its hotels. *Id.* Southern Hospitality asserted a claim under its policy's civil authority coverage. *Id.* The insurer denied coverage on the grounds that the insureds did not sustain direct physical loss, and that access to the hotel premises was not prohibited as required for civil authority coverage. *Id.* at 1141. *Southern Hospitality* grants summary judgment in favor of the insurer. Since "access was not prohibited by the civil-authority order . . . there was therefore no coverage for business losses." *Id.*

Like *Southern Hospitality*, courts throughout the country hold there is no civil authority coverage where access to property is not prohibited. *See, e.g., Syufy Enters. v. Home Ins. Co. of Ind.*, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (no coverage where theater access was never specifically foreclosed by civil authority order imposing dawn-to-dusk curfews in response to rioting following Rodney King verdict); *Bros., Inc. v. Liberty Mut. Fire Ins. Co.,* 268 A.2d 611, 614 (D.C. 1970) (no coverage for loss due to restriction of business hours and sale of alcoholic beverages pursuant to curfew and municipal regulations imposed during civil disorders in city); *see also Goldstein v Trumbull Ins. Co.*, 2016 WL 1324197, at *12 (N.Y. Sup. Ct. Apr. 05, 2016); *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, 2005 WL 1331700, at *4 (Minn. Ct. App. June 7, 2005).

Here, Plaintiff admits that access to its premises was not prohibited. Rather, according to Plaintiff, "several of its employees could not show up for work and risk becoming infected [with COVID-19]." (Compl. at ¶ 14). Plaintiff likewise alleges access to its property was "limited"— though not prohibited. (Compl. at ¶ 16). Because the Complaint's allegations establish access was not prohibited, the Civil Authority coverage does not apply.

20

**IV.    There Is No Ingress and Egress Coverage**

The Ingress and Egress coverage requires both a direct physical loss at a location contiguous to the insured's property and the prevention of access to the insured's property as a result of that direct physical loss. As Cincinnati has demonstrated, the Complaint does not allege any facts that show direct physical loss at any location, let alone at a location contiguous to Plaintiff's premises. Moreover, even if the alleged "likely" presence of the Coronavirus resulted in direct physical loss—which it did not—it certainly did not prevent access to the insured premises. (*See* Compl. at ¶ 15). To the contrary, Plaintiff admits that its employees and customers *could* access the premises, but some apparently chose not to. (*See* Compl. at ¶¶ 14 & 16).

Finally, even in the event the Stay at Home Orders had prevented access to its premises—which, again, they did not—the Policy unambiguously states that the Ingress and Egress coverage does not apply if ingress or egress from the Plaintiff's premises is prohibited by civil authority. (Compl., Ex. A at pp. 22 & 76-77). Because the Complaint's allegations establish access to Plaintiff's premises was not prevented, the Ingress and Egress coverage does not apply.

**V.    There Is No So-Called Sue and Labor Coverage**

The Policy imposes on Plaintiff certain "Duties in the Event of Loss or Damage." Among other things, the Plaintiff is required to protect Covered Property from further damage and keep a record of expenses incurred to protect the Covered Property for consideration in the settlement of the claim ("the Preservation of Property Clause"). (Compl., Ex. A, pp. 33-34 & 79). Plaintiff refers to this provision as the "Sue and Labor coverage." Plaintiff contends, incorrectly, that the "Sue and Labor coverage" applies to exclusively financial losses caused by the Coronavirus.

As an initial matter, the Preservation of Property Clause is not an additional coverage. Instead, it imposes a duty on the insured to prevent further damage to the extent reasonably

possible *in the event of a Covered Cause of Loss*. As established, there is no covered cause of loss here because there is no direct physical loss. The insured can recover expenses in the event of a covered loss. The Policy's Preservation of Property Clause expressly provides: "However, in no event will we pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss." (Compl., Ex. A, pp. 34 & 79).

There is no Covered Cause of Loss here because, as demonstrated above, there is no direct physical loss to Plaintiff's Covered Property. Thus, the Policy's so-called Sue and Labor coverage does not apply.

<u>**Conclusion**</u>

There is no possible coverage because the Coronavirus does not cause direct physical loss to property. In the absence of direct physical loss to property for the other reasons discussed above, Plaintiffs have not alleged a claim on which relief can be granted. Accordingly, Cincinnati respectfully requests that its Motion to Dismiss be granted.

June 17, 2020

Respectfully submitted by:

**DEFENDANT, THE CINCINNATI INSURANCE COMPANY**

WALLACE SAUNDERS, CHARTERED

BY: /s/ Michael L. Brown
    Michael L. Brown    KS# 21313
    Kelvin J. Fisher    KS#22014
    10111 West 87th Street
    Overland Park, KS 66212
    (913) 888-1000 FAX - (913) 888-1065
    mbrown@wallacesaunders.com
    kfisher@wallacesaunders.com
**ATTORNEYS FOR DEFENDANT
THE CINCINNATI INSURANCE
COMPANY**

The undersigned hereby certifies that a true and correct copy of the above and foregoing was electronically filed with the United States District Clerk using the CM/ECF system which sent notification and provided access to a copy of this filing on the 17th day of June, 2020, to:

Patrick J. Stueve
Bradley T. Wilders
Curtis Shank
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
stueve@stuevesiegel.com
wilders@stuevesiegel.com
shank@stuevesiegel.com

J. Kent Emison
Langdon & Emison LLC
911 Main Street
PO Box 220
Lexington, MO 64067
kent@lelaw.com

John J. Schirger
Matthew W. Lytle
Joseph M. Feierabend
Miller Schirger LLC
4520 Main St., Suite 1570
Kansas City, MO 64111
jschirger@millerschirger.com
mlytle@millerschirger.com
jfeierabend@millerschirger.com

Richard F. Lombardo
Dawn M. Parsons
Michael F. Barzee
Rachael D. Longhofer
Shaffer Lombardo Shurin, P.C.
2001 Wyandotte Street
Kansas City, MO 64108
rlombardo@sls-law.com
dparsons@sls-law.com
mbarzee@sls-law.com
rlonghofer@sls-law.com

ATTORNEYS FOR PLAINTIFF AND
THE PROPOSED CLASSES

/s/ Michael L. Brown
Michael L. Brown
For the Firm